**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO.** |
| **Plaintiff,** | **JUDGE** 2:20 cr 62 |
| **vs.** | **INDICTMENT** |
| **STEVEN G. ROSSER and** | Judge Morrison |
| **WHITNEY R. LANCASTER,** | 18 U.S.C. § 241 |
| | 18 U.S.C. § 1349 |
| **Defendants.** | 18 U.S.C. § 1343 |

**THE GRAND JURY CHARGES:**

<u>COUNT 1</u>
**(Conspiracy to Violate Another Person's Civil Rights)**

At times material to this Indictment:

1.      The defendant, **STEVEN G. ROSSER**, was employed as a police officer by the Columbus, Ohio Division of Police ("CPD").

2.      Over the course of his approximately nineteen-year employment, the defendant, **STEVEN G. ROSSER**, received extensive training on CPD's policies and procedures. At the time of his commission to the police force, **ROSSER** took an oath to uphold the United States Constitution, the Constitution and laws of the State of Ohio, and the Charter and City Code of the City of Columbus.

3.      The defendant, **STEVEN G. ROSSER**, was assigned as a detective in CPD's Vice Unit from approximately April 14, 2013, until October 31, 2018. On or about January 31, 2018, **ROSSER** was assigned as the liquor compliance officer/liaison within the Vice Unit.

4.     In March and April 2015, Nick's Cabaret was a gentleman's nightclub located at 2210 East Dublin Granville Road, Columbus, Ohio, which was managed and operated by "N.J."

5.     In March and April 2015, "B.A." was a citizen of the United States who occasionally performed promotional work at Nick's Cabaret and other night clubs in and around Columbus, Ohio.

## THE CONSPIRACY AND ITS OBJECT(S)

6.     From on or about March 28, 2015, through and including the date of this Indictment, the exact dates being unknown, in the Southern District of Ohio and elsewhere, the defendant, **STEVEN G. ROSSER**, and others, both known and unknown to the grand jury, did knowingly and willfully conspire and agree together and with each other to injure, oppress, threaten, and intimidate a person known to the grand jury ("B.A.") in the free exercise and enjoyment of the rights secured to him by the Constitution and the laws of the United States—that is, the right to be free from unreasonable search and seizure without probable cause, in violation of the Fourth Amendment, by one acting under color of law—who was at that time present in the Southern District of Ohio within the United States of America.

## OVERT ACTS

7.     In furtherance of the conspiracy, and in order to effect the object(s) of the conspiracy, the following overt acts, among others, were committed in the Southern District of Ohio by one or more of the co-conspirators:

        a.   On or about March 28, 2015, the defendant, **STEVEN G. ROSSER**, became involved in a physical altercation with "B.A." while at Nick's Cabaret.

2

b. At the time of that physical altercation, and in the days that followed, the defendant, **STEVEN G. ROSSER**, represented that he was acting in the course and scope of his employment as a CPD Vice Officer while at Nick's Cabaret.

c. On or about April 2, 2015, the defendant, **STEVEN G. ROSSER**, prepared and submitted a Letter of Information to his superiors regarding a supposed "threat" that was relayed to him by "N.J." According to the Letter of Information that **ROSSER** prepared, "N.J." heard from an unspecified individual(s) that "B.A." was at Nick's Cabaret on March 28, 2015, to threaten **ROSSER's** life.

d. On or about April 2, 2015, the defendant, **STEVEN G. ROSSER**, logged onto a CPD computer network using the name and log-in credentials of a fellow CPD officer, without that officer's knowledge or authorization, for the purpose of preparing and submitting a false Preliminary Investigation Report regarding the "threat" that was relayed to **ROSSER** by "N.J." concerning "B.A."

e. On or about April 2, 2015, the defendant, **STEVEN G. ROSSER**, prepared and submitted a false Preliminary Investigation Report, numbered 153033741-001, regarding the same "threat" using the name of his fellow CPD officer as if that officer had prepared and submitted the report himself or herself, all without knowledge or authorization from that fellow officer.

f. Based, in part, on the Letter of Information that the defendant, **STEVEN G. ROSSER**, prepared and submitted to his superiors, a CPD Assault Squad Detective prepared, submitted, and obtained approval for a criminal complaint and arrest warrant against "B.A." for the felonious assault of **ROSSER**.

g. On or about April 9, 2015, CPD officers arrested "B.A." and searched him pursuant to the criminal complaint and arrest warrant described above, in violation of his civil rights. "B.A." remained detained in the Franklin County Correctional Center on that charge from April 9, 2015, through April 13, 2015.

h. The criminal complaint against "B.A." was ultimately dismissed and no further criminal charges were ever brought against him for the physical altercation with the defendant, **STEVEN G. ROSSER**.

i. Up to the date of this Indictment, the defendant, **STEVEN G. ROSSER**, and "N.J." have taken steps to conceal the conspiracy to deprive "B.A." of his civil rights from others.

**All in violation of 18 U.S.C. § 241.**

**Count 2**
**(Conspiracy to Violate Another Person's Civil Rights)**

The allegations contained in Paragraphs 1-3 are incorporated by reference here. Additionally, at times material to this Indictment:

8. The defendant, **WHITNEY R. LANCASTER**, was employed as a police officer by the Columbus, Ohio Division of Police ("CPD").

9. Over the course of his approximately thirty-one year employment, the defendant, **WHITNEY R. LANCASTER**, received extensive training on CPD's policies and procedures. At the time of his commission to the police force, **LANCASTER**, took an oath to uphold the United States Constitution, the Constitution and laws of the State of Ohio, and the Charter and City Code of the City of Columbus.

4

10.     The defendant, **WHITNEY R. LANCASTER**, was assigned as a detective in CPD's Vice Unit from approximately February 2016 until November 31, 2018.  On February 12, 2017, **LANCASTER** was assigned as the nuisance abatement officer within the Vice Unit.

11.     The Dollhouse was a gentleman's club located at 1680 Karl Court, Columbus, Ohio.  From roughly 2007 through February 2017, the Dollhouse was co-owned by "A.N." (majority owner), his sister, "Y.N.," (shareholder), and "A.S." (minority owner).  After "A.N." died in February 2017, "Y.N.," the ex-wife of "A.S.," became the director and majority shareholder of the Dollhouse.  In October 2017, "A.S." filed a lawsuit against his ex-wife over their respective ownership and control of the Dollhouse.  By April 2018, "A.S.," who was a citizen of the United States, still co-owned the Dollhouse with his ex-wife, "Y.N."  At "Y.N.'s" request, "N.J." served as the manager and operator of the Dollhouse.

## THE CONSPIRACY AND ITS OBJECT(S)

12.     Beginning on a date unknown to the Grand Jury but no later than April 20, 2018, and continuing through and including the date of this Indictment, the exact dates being unknown, in the Southern District of Ohio and elsewhere, the defendants, **STEVEN G. ROSSER**, **WHITNEY R. LANCASTER**, and others, both known and unknown to the grand jury, did knowingly and willfully conspire and agree together and with each other to injure, oppress, threaten, and intimidate a person known to the grand jury ("A.S.") in the free exercise and enjoyment of the rights secured to him by the Constitution and the laws of the United States—that is, the right to be free from unreasonable search and seizure without probable cause, in violation of the Fourth Amendment, by one acting under color of law—who was at that time present in the Southern District of Ohio within the United States of America.

5

## OVERT ACTS

13.     In furtherance of the conspiracy, and in order to effect the object(s) of the conspiracy, the following overt acts, among others, were committed in the Southern District of Ohio by one or more of the co-conspirators:

   a.   On or about April 20, 2018, "A.S." arrived at the Dollhouse at or around its closing time. ~~Moments later,~~ The defendant, **STEVEN G. ROSSER**, arrived at the Dollhouse and proceeded to the office inside, where "A.S." was located.

   b.   The defendant, **STEVEN G. ROSSER**, and other CPD officers then began to search the office. After being alerted to look on the table, **ROSSER** located suspected cocaine residue on that table and then arrested "A.S." for possession of cocaine. **ROSSER** and the other officers then searched "A.S" and his vehicle, without a warrant or consent, in violation of his civil rights.

   c.   Throughout the morning of April 20, 2018, before and after "A.S." was arrested, the defendants, **STEVEN G. ROSSER** and **WHITNEY R. LANCASTER**, were in frequent contact with one another by cellular telephone, and **LANCASTER** was positioned near the Dollhouse to assist as necessary.

   d.   Up to the date of this Indictment, the defendants, **STEVEN G. ROSSER** and **WHITNEY R. LANCASTER**, have taken steps to conceal the conspiracy to deprive "A.S." of his civil rights from others.

**All in violation of 18 U.S.C. § 241.**

## COUNT 3
### (Conspiracy to Commit Wire Fraud)

The allegations contained in Paragraphs 1-3 and 8-10 are incorporated by reference here. Additionally, at times material to this Indictment:

14.     In 2018, Fort Rapids Indoor Waterpark Resort ("Fort Rapids") was a hotel, restaurant, and indoor water-park complex located at 4560 Hilton Corporate Drive, Columbus, Ohio, which was owned by a California-based investor group and managed by "T.G."

15.     On or about January 3, 2018, Fort Rapids suffered a fire-sprinkler break which led to extensive flooding at the site. As a result, the Columbus Division of Fire ordered a 24-hour per day "fire-watch" to be set at that location, which required qualified personnel to be on site at all times to monitor the site for further damage and safety issues.

16.     Ultimately, the manager of Fort Rapids, "T.G.," contacted the defendant, **STEVEN G. ROSSER**, to coordinate coverage for this newly required "fire-watch" through CPD's Special Duty Program.

17.     CPD authorizes Special Duty work for its officers on a case-by-case basis. Under this program, officers were typically paid $48 per hour to assist private entities with their individual security needs. One requirement of Special Duty work is that the officers involved must perform that work outside of their normal duty hours with CPD. In other words, officers cannot double-bill CPD and their Special Duty employers for their work.

## THE SCHEME TO DEFRAUD

18.     On or about January 4, 2018, the defendant, **STEVEN G. ROSSER**, agreed with "T.G." that **ROSSER** and other CPD officers would provide the "fire-watch" at Fort Rapids on an ongoing basis for $48 per hour. Under this agreement, it was required that at least two officers would be on-site (in shifts) at Fort Rapids at all times, 24- hours per day, seven days per week, as per the Columbus Division of Fire's directive. This staffing level was later reduced to one officer per shift in or around April 2018.

19.     The defendant, **STEVEN G. ROSSER**, and "T.G." also agreed that **ROSSER** would be the point-of-contact for CPD officers working the Special Duty Detail at Fort Rapids; that **ROSSER** would submit all invoices (time sheets) for the Special Duty Detail; and that **ROSSER** could bill the Fort Rapids ownership group an additional sum each month for his own administrative time and expense in coordinating the Special Duty Detail at Fort Rapids.

20.     Although individual officers logged their own Special Duty hours while at Fort Rapids, the defendant, **STEVEN G. ROSSER**, was in charge of compiling, signing, scanning, and then emailing, through the use of interstate commerce, all invoices (time sheets) to "T.G." for the Special Duty Detail at Fort Rapids.

21.     "T.G.," in turn, mailed all paychecks from California to the defendant, **STEVEN G. ROSSER**, for disbursement to himself and the other Special Duty officers, which "T.G." tried to accomplish on a biweekly basis.

22.     As part of the scheme to defraud, the defendants, **STEVEN G. ROSSER** and **WHITNEY R. LANCASTER**, routinely reported materially false and fraudulent hours in connection with their Fort Rapids Special Duty assignment. That is, **ROSSER** and **LANCASTER** routinely reported to the Fort Rapids ownership group that they were working Special Duty during dates and times when **ROSSER** and **LANCASTER** *also* reported working their regular shifts as CPD officers.

23.     As part of the scheme to defraud, the defendants, **STEVEN G. ROSSER** and **WHITNEY R. LANCASTER** "double-billed" the Fort Rapids ownership group and CPD on approximately 29 days between January and May 2018. This materially false and fraudulent double-billing led to overpayments from the Fort Rapids ownership group and CPD.

24.     The defendants, **STEVEN G. ROSSER** and **WHITNEY R. LANCASTER**, carried out this scheme to defraud from roughly January 2018 through roughly May 2, 2018, when Fort Rapids transferred the coordination of its Special Duty Detail to a different CPD officer within the Vice Unit.

## THE CONSPIRACY AND ITS OBJECT(S)

25.     From on or about January 4, 2018, through at least May 2, 2018, the exact dates being unknown, in the Southern District of Ohio and elsewhere, the defendants, **STEVEN G. ROSSER, WHITNEY R. LANCASTER**, and others, both known and unknown to the grand jury, did knowingly and willfully conspire and agree together and with each other to commit wire fraud, that is, to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

All in violation of 18 U.S.C. § 1349.

A TRUE BILL

s/Foreperson
**FOREPERSON**

**DAVID M. DEVILLERS**
**UNITED STATES ATTORNEY**

**KEVIN W. KELLEY (0042406)**
**NOAH R. LITTON (0090479)**
**Assistant United States Attorneys**